ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| JOSÉ A. LOZADA RAMOS<br><br>PETICIONARIO<br><br>V.<br><br>SUPERINTENDENTE COMPLEJO CORRECCIONAL BAYAMÓN 705<br><br>RECURRIDO | KLCE202300027 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala de Humacao<br><br>Caso Núm. HSCI202200211<br><br>Sobre: Habeas Corpus |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

Brignoni Mártir, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de enero de 2023.

José A. Lozada Ramos (señor Lozada o peticionario) presentó un *Recurso [de] Certiorari Criminal* en el que solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI), el 14 de diciembre de 2022. Mediante el aludido dictamen el tribunal *a quo* declaró *No Ha Lugar* la expedición del auto de *habeas corpus* que presentara el peticionario bajo el fundamento de que se le mantenía sumariado ilegalmente tras haber transcurrido el término de detención preventiva en espera de juicio.

Por los fundamentos que expondremos a continuación *denegamos* la expedición del auto solicitado.

I

El Ministerio Público presentó denuncias contra el señor Lozada Ramos por infringir el Art. 92 (asesinato en primer grado) y el Art. 249 (riesgo a la seguridad u orden público al disparar un arma de fuego) del Código Penal de Puerto Rico, 33 LPRA secs. 5141 y 5339; y el Art. 6.05 (portación, transportación o uso de armas de fuego sin licencia), el Art. 6.09 (portación, posesión, y uso de un arma larga semiautomática) y el Art. 6.14

Número Identificador
RES2023 _____

(disparar o apuntar armas de fuego) de la Ley de Armas de Puerto Rico de 2020, Ley Núm. 168-2019, 25 LPRA secs. 466 (d) (h) y (m). En esencia, se le imputó haber asesinado en concierto y común acuerdo con Delwin Navarro c/p Tuntún, a Juan C. Aponte Figueroa al dispararle con un arma de fuego, en hechos ocurridos en las Parcelas Martorell de Yabucoa, el 3 de julio de 2021.

El 26 de mayo de 2022, se celebró la vista de causa probable para arresto, en ausencia del peticionario. El TPI encontró causa por todos los delitos imputados y fijó una fianza global de aproximadamente un millón de dólares. El 31 de mayo de 2022, se diligenció la orden de arresto y al no prestar la fianza impuesta, el señor Lozada Ramos fue ingresado en el Complejo Correccional de Bayamón 705, el 1 de junio de 2022.

Aunque la vista preliminar quedó señalada para el 17 de junio de 2022, debido a varias posposiciones comenzó el 1 de diciembre de 2022 y su continuación quedó pautada para el 19 de diciembre de 2022. El 2 de diciembre de 2022, el señor Lozada Ramos presentó, a través de su defensa, una *Solicitud de Auto de Habeas Corpus* en la que solicitó ser excarcelado por haberse vencido el término constitucional de detención preventiva de seis (6) meses sin que empezara el juicio. Según indicó el Estado provocó la dilación del caso en la vista preliminar, por haberle removido a su abogado original y haberle provocado la dificultad de tener que gestionar nueva representación legal estando preso. El Ministerio Público se opuso alegando que la única razón para la dilación fue la inacción por parte del acusado en contratar representación legal. Conducta que a su juicio estaba claramente dirigida a evitar la continuación del proceso en su contra.

El TPI celebró una vista para atender la solicitud del auto de *habeas corpus* luego de la cual emitió la *Resolución* recurrida denegando la expedición del auto. En dicha determinación el foro de instancia realizó un minucioso recuento procesal del caso que por su pertinencia al presente recurso transcribimos a continuación:

1. <u>17 de junio de 2022</u>: Llamado el caso para vista preliminar, el imputado no fue provisto de manera presencial al Tribunal por el DCR. En representación legal del imputado compareció el Lcdo. Orlando Cameron Gordon. La defensa y el Ministerio Público informaron estar preparados, se reseñaló la vista preliminar.

a. <u>23 de junio de 2022</u>: El Ministerio Público presentó una solicitud de descalificación del Lcdo. Orlando Cameron Gordon y/o Bufete Gordon & Cameron.

2. <u>24 de junio de 2022</u>: Llamado el caso para vista preliminar, se concedió término a la defensa para replicar a la solicitud descalificación instada por el Ministerio Público. Se citó vista para el 30 de junio de 2022 para discutir la controversia sobre descalificación y vista preliminar para el 7 de julio de 2022. La defensa y el Ministerio Público informaron estar preparados.

3. <u>30 de junio de 2022</u>: Se celebró vista en la cual se discutió el asunto de la descalificación. La defensa y el Ministerio Público informaron estar preparados.

4. <u>7 de julio de 2022</u>: Llamado el caso para vista preliminar, el Tribunal expuso sobre la Resolución emitida declarando Ha Lugar la descalificación del Lcdo. Orlando Cameron Gordon y/o del Bufete Gordon & Cameron. La vista preliminar fue reseñalada, el Ministerio Público informó estar preparado.

5. <u>13 de julio de 2022</u>: Llamado el caso para vista preliminar, el imputado no fue provisto de manera presencial al Tribunal por el DCR, se informó que había arrojado resultado positivo a COVID-19. No compareció representación legal del imputado, el Ministerio Público informó estar preparado.

6. <u>1 de agosto de 2022</u>: Llamado el caso para vista preliminar, el imputado compareció sin representación legal. El Tribunal le orientó sobre su deber de gestionar representación legal, se le apercibió sobre la imposición de desacato de incumplir. A pesar del imputado alegar reiteradamente que contaba con los medios económicos para costear abogado(a) privado(a), se refirió a la Sociedad para la Asistencia Legal (SAL) para ser conferenciado el 5 de agosto de 2022; la vista quedó reseñalada para el 16 de agosto de 2022. El Ministerio Público informó estar preparado.

7. <u>16 de agosto de 2022</u>: Llamado el caso para vista preliminar, el imputado compareció sin representación legal. Compareció el Lcdo. Arcelio Maldonado Avilés, Director de la SAL de Humacao, quien luego de haberse aclarado varias interrogantes solicitó que el imputado fuese traído nuevamente para culminar el proceso de conferencia. El Ministerio Público informó estar preparado. Se señaló vista de "estado de los procedimientos" y vista preliminar para otra fecha.

8. <u>19 de agosto de 2022</u>: A la vista de "estado de los procedimientos" compareció el imputado. compareció el Lcdo. Carlos R. Nido Escribano de la SAL e informó que había conferenciado al imputado y estaba en proceso de investigación sobre indigencia.

9. <u>25 de agosto de 2022</u>: A la vista de "estado de los procedimientos" compareció el imputado. A su vez, compareció el Lcdo. Carlos R. Nido Escribano e informó que asumía la representación legal del imputado. A solicitud de la defensa para prepararse adecuadamente, se recalendarizó la vista preliminar para el 8 de septiembre de 2022; se dejó sin efecto el señalamiento del 29 de agosto de 2022.

10. <u>8 de septiembre de 2022</u>: Llamado el caso para vista preliminar, el imputado compareció representado legalmente por el Lcdo. Nido Escribano. La defensa informó haber presentado el día anterior una solicitud de desestimación. Además, la defensa afirmó necesitar más tiempo para prepararse. El Ministerio Público informó estar preparado, se reseñaló la vista preliminar.

    a. …

11. <u>14 de septiembre de 2022</u>: Llamado el caso para vista preliminar, el imputado compareció representado legalmente por el Lcdo. Nido Escribano. Inicialmente la defensa solicitó

mas tiempo para prepararse. No obstante, el imputado informó al Tribunal que sus familiares estaban realizando gestiones para contratar la representación legal privada del Lcdo. Luis Aponte Bermúdez, y que no le interesaba los servicios de la SAL. Que recientemente el Bufete Gordon & Cameron le había devuelto el dinero. No se relevó al Lcdo. Nido Escribano de la SAL. El Tribunal advirtió que, si las dilaciones obedecían a acciones originadas por el imputado, aplicaría un crisol mayor para determinar la procedencia de un auto de habeas corpus. El Ministerio Público informó estar preparado, se señaló una vista de "estado de los procedimientos" para el día siguiente.

12. 15 de septiembre de 2022: A la vista de "estado de los procedimientos" compareció el imputado representado legalmente pro el Lcdo. Nido Escribano. Por videoconferencia compareció el Lcdo. Luis Aponte Bermúdez, quien solicitó un reseñalamiento para conferenciar al imputado e informar si estuviese asumiendo la representación legal.

   a. …

13. 28 de septiembre de 2022: A la vista de "estado de los procedimientos" compareció el imputado representado legalmente por el Lcdo. Nido Escribano. Se informó al Tribunal que el Lcdo. Luis Aponte Bermúdez no asumiría la representación legal del imputado. El Sr. Lozada Ramos informó tener el interés y los recursos económicos para contratar representación legal privada, a esos fines, se relevó al Lcdo. Nido Escribano de la representación legal de éste. Se señaló vista de "estado de los procedimientos" para el día siguiente.

14. 29 de septiembre de 2022: A la vista de "estado de los procedimientos" compareció el imputado sin representación legal. El Sr. Lozada Ramos reiteró el interés y los recursos económicos para contratar representación legal privada. Informó que una prima suya era quien se encontraba asistiéndole para completar la contratación privada. Este Tribunal coordinó la comparecencia virtual por videoconferencia de la prima del imputado (Sra. Normarie Ramos), quien afirmó que estaba realizando las gestiones para la contratación de la representación legal del imputado. Se señaló una nueva vista de estatus, la Sra. Normarie Ramos quedó citada.

   a. …

15. 5 de octubre de 2022: A la vista de "estado de los procedimientos" compareció el imputado sin representación legal, su prima (Sra. Normarie Ramos) no compareció. Al presente el Sr. Lozada Ramos no tenía representación legal, no se habían efectuado gestiones para ello. Este Tribunal orientó nuevamente al imputado, se le apercibió que los términos de juicio rápido se continuaban extendiendo en su contra. A su vez, se le advirtió que el término de habeas corpus podía ser confiscado; todas las suspensiones habían sido causadas por el imputado. Por su parte, el Tribunal coordinó con el DCR para que se permitiera al imputado realizar las llamadas telefónicas necesarias a través de su técnico sociopenal para agilizar el proceso de contratación de abogado. Se señaló vista de "estado de los procedimientos".

16. 11 de octubre de 2022: A la vista de "estado de los procedimientos" compareció el imputado sin representación legal. El imputado informó que la orden al DCR de que se le permitiera comunicarse telefónicamente fue cumplida. Este Tribunal realizó un recuento de los reseñalamientos efectuados por la falta de contratación de representación legal del Sr. Lozada Ramos. El Ministerio Público expuso que ha estado preparado en todas las vistas para presentar los méritos del caso, que el imputado ha dilatado los procedimientos y las razones por las cuales no se ha celebrado la vista preliminar son adjudicables exclusivamente a este; el Tribunal acogió las referidas expresiones. Por su parte, el Tribunal dispuso nuevamente que la cláusula constitucional de detención

preventiva podía ser confiscada y no necesariamente procedería por tratarse de causas atribuibles al imputado. Se señaló vista preliminar y se ordenó al imputado a comparecer a la misma con representación legal.

17. <u>17 de octubre de 2022</u>: Llamado el caso para vista preliminar, el imputado compareció sin representación legal, informó desconocer las gestiones concretas realizadas por su prima (Sra. Normarie Ramos) para contratar abogado(a) de la práctica privada. La mencionada dama no estaba presente en el Tribunal. El Ministerio Público informó estar preparado para la vista preliminar en sus méritos. El Tribunal realizó nuevamente un recuento sobre las incidencias procesales que han causado la dilación del proceso. El Tribunal fue enfático en que la omisión del imputado en comparecer representado legalmente podría causar la denegatoria a un recurso de habeas corpus, así como la extensión de los términos de juicio rápido en contra de éste. El Tribunal ordenó la designación de abogado de oficio y citó conferencia con antelación a la vista preliminar para el 21 de octubre de 2022. Se reseñaló la correspondiente vista preliminar.

18. <u>24 de octubre de 2022</u>: Llamado el caso para vista preliminar, el imputado compareció representado legalmente por el Lcdo. Ramón I. Vega González, designado de oficio. Se le informó al Tribunal que el imputado estaba en conversaciones para contratar como su representante legal al Lcdo. Edwin Castro Fontánez. Luego de comenzada la vista, el Lcdo. Castro Fontánez compareció de manera virtual por videoconferencia e informó que se encontraba en conversaciones para asumir la representación legal del imputado, sin embargo, no se había finiquitado la contratación. El Tribunal no relevó al Lcdo. Vega González e instruyó al Lcdo. Castro Fontánez a informar el resultado de ello. El Ministerio Público informó encontrarse preparado, se señaló vista de estado de los procesos para el 2 de noviembre de 2022 y vista preliminar para el 7 de noviembre de 2022.

19. <u>2 de noviembre de 2022</u>: A la vista de "estado de los procedimientos" compareció el imputado representado legalmente por el Lcdo. Vega González. Compareció, a su vez, el Lcdo. Castro Fontánez quien informó que asumiría la representación legal del Sr. Lozada Ramos; se relevó al Lcdo. Vega González. El Ministerio Público informó que se encontraba preparado para la vista preliminar, la defensa expuso que la próxima fecha disponible en su calendario era el 1 y 2 de diciembre de 2022. El Ministerio Público se opuso a un reseñalamiento tan prolongado, más aún cuando la fecha propuesta sería en exceso de los 180 días. La defensa argumentó que lo anterior resultaba prematuro. Considerado lo anterior, el Tribunal mantuvo el señalamiento de vista preliminar para el 7 de noviembre de 2022, a su vez, se citó para el 1 y 2 de diciembre de 2022. El Ministerio Público reiteró su oposición a las fechas establecidas pro ser prolongadas.

20. <u>7 de noviembre de 2022</u>: Llamado el caso para vista preliminar compareció el imputado de manera virtual por videoconferencia desde la institución penal; el Lcdo. Castro Fontánez no compareció, en la vista anterior había adelantado que no podía estar presente por conflicto en el calendario. El Ministerio Público informó encontrarse preparado para la vista preliminar. El Tribunal dispuso que la vista preliminar se celebraría el 1 y 2 de diciembre de 2022.

21. <u>1 de diciembre de 2022</u>: Luego de varias incidencias y la tardanza de la defensa comenzó la vista preliminar y se dejó sin efecto el señalamiento del 2 de diciembre de 2022. Se señaló la continuación de la vista preliminar para el 19 de diciembre de 2022.

En desacuerdo con la denegatoria a su solicitud de *habeas corpus* el peticionario presentó el recurso de *Certiorari* que nos ocupa en el cual alega que:

> Erró el Honorable Tribunal de Instancia, al declarar *No Ha Lugar* un recurso de *habeas corpus,* utilizando criterios de evaluación de la doctrina de juicio rápido *vis a vis* la detención preventiva, al atribuirle al recurrente la dilación del caso a nivel de vista preliminar, cuando fue el propio Estado quien provocó la dilación al inhabilitarle al abogado que contrató, dejándolo sin representación legal. El derecho a la detención preventiva fue abolido por el Hon. Juan Carlos Vera Rivera. El peticionario lleva ya siete meses y medio de detenido, no se ha celebrado su juicio y sigue confinado ilegalmente.

En esencia alegó que fue el Estado el que provocó la dilación del caso en la vista preliminar, al promover la descalificación de sus abogados originales y requerirle la contratación de un nuevo abogado estando preso.

De otro lado, a solicitud nuestra, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General (Procurador General o peticionado) presentó su *Escrito en Cumplimiento de Orden*. En este sostiene la procedencia de la determinación recurrida al plantear que el señor Lozada Ramos raptó su derecho a detención preventiva con las múltiples suspensiones que solicitó a la vista preliminar para contratar un abogado privado y a pesar de que el foro recurrido le proveyó dos abogados de oficio que rechazó. Según argumentó, el Ministerio Público estuvo en todo tiempo preparado para continuar el proceso.

Contando con la posición de ambas partes, resolvemos conforme al marco jurídico reseñado a continuación.

II

*A. El certiorari*

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670, Código de Enjuiciamiento Civil, 32 LPRA sec. 3491; *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). A pesar de la amplitud de errores que pueden ser revisados mediante el *certiorari* este auto sigue siendo un recurso discrecional y los tribunales debemos utilizarlo con cautela y por razones de peso. *Íd.*, pág. 918. Las resoluciones u

órdenes dictadas por los tribunales de primera instancia son revisables ante este Tribunal de Apelaciones, mediante el recurso de *certiorari*. Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y.

La Regla 40 del Reglamento de nuestro Tribunal, 4 LPRA Ap. XXII-B, establece los criterios que debemos tomar en consideración a los fines de ejercer sabia y prudentemente nuestra facultad discrecional para entender en los méritos los asuntos que nos son planteados mediante *certiorari*, a saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*B. Detención preventiva*

La Constitución de Puerto Rico establece la protección contra una detención preventiva en exceso de seis (6) meses al disponer que:

> Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.
> La detención preventiva antes del juicio no excederá de seis meses. Las fianzas y las multas no serán excesivas. [1]

Esta protección constitucional surge del derecho de todo acusado a un juicio justo, rápido y público. *Pueblo v. Diaz Rivera*, 204 DPR 472, 483 (2020); *Ex Parte Ponce Ayala*, 179 DPR 18, 29 (2010). Tiene como propósito dual asegurar la comparecencia del acusado cuando éste no ha prestado la fianza, y evitar que se le castigue excesivamente por un delito

---

[1] Sec. 11, Art. II de la Constitución de Puerto Rico, LPRA, Tomo 1.

que no ha sido juzgado. *Ex Parte Ponce Ayala I*, supra, pág. 23; *Pueblo v. Pagán Medina*, 178 DPR 228, 236 (2010).

El término detención preventiva se refiere al periodo anterior al juicio, en el cual el acusado se encuentra detenido preventivamente o sumariado, porque no prestó la fianza impuesta, y en espera de que se le celebre el correspondiente proceso criminal. *Pueblo v. Pagán Medina*, supra; *Ruiz v. Alcaide*, 155 DPR 492, 502 (2001). Este término comienza a transcurrir desde que el imputado queda detenido preventivamente por no poder prestar la fianza requerida o desde su revocación. De ordinario, esto ocurre en la vista en que se determina causa probable para arresto. *Ex Parte Ponce Ayala I*, supra, pág. 27. Esta es una instancia en la que nuestro ordenamiento ofrece *factura más ancha*, pues esta disposición no existe ni tiene equivalente en la Constitución de Estados Unidos. *Pueblo v. Paonesa Arroyo*, 173 DPR 203, 210 (2008).

Ahora bien, el Tribunal Supremo ha sido consistente al sostener que esta protección constitucional no es absoluta. *Pueblo v. Diaz Rivera*, supra, pág. 484; *Pueblo v. Pagán Medina*, supra, pág. 237. Desde, la Sentencia emitida en *Sánchez v. González*, 78 DPR 849 (1955), se reconoció que:

> Como es un derecho que madura normalmente por el mero lapso del tiempo, ni la ilegalidad ni el fraude de un acusado – en actos tendentes a producir la incapacidad del Estado para someterlo a Juicio- ampararía su ejercicio incondicional. Ese derecho, no puede ser objeto de renuncia, tampoco puede ser objeto de rapto, y de mediar circunstancias del carácter de las apuntadas, el acusado no podría reclamarlo hasta que el Estado, pudiendo descargar prontamente su responsabilidad trayéndole a juicio, dejare de hacerlo. *Sánchez v. González*, 78 DPR 849, 858 (1955).

Aunque en ese caso se resolvió que las solicitudes de posposición de un acusado no constituyen una renuncia a su derecho a salir en libertad una vez ha vencido el término de detención preventiva; el Alto Foro reconoció que esta garantía constitucional tampoco puede ser objeto de rapto por parte del acusado, mediante actos tendentes a impedir que el Estado continúe el proceso.

En esta misma línea y siguiendo lo resuelto en *Ruiz v. Alcaide*, supra, en *Pueblo v. Pagán Medina,* supra, se excluyó del cómputo de

detención preventiva el tiempo que una persona se encuentra no procesable. Esto bajo el razonamiento de que mientras el imputado se encuentra no procesable, el Estado está impedido de continuar con los procesos en su contra. *Íd.*, pág. 243-244.

Más recientemente, el Tribunal Supremo resolvió que no procede conceder un auto de *habeas corpus* cuando, a pesar de que la detención preventiva de un acusado excedió seis (6) meses, esta solicitud se presenta después de que el juicio criminal ha comenzado. *Pueblo v. Diaz Alicea*, supra, pág. 487. Esto ya que, el derecho a ser excarcelado transcurridos los seis meses de detención preventiva, supone el ejercicio de tal derecho. *Íd.*

III

El señor Lozada Ramos fue encarcelado el 1 de junio de 2022, tras ser arrestado y no prestar la fianza impuesta.  La vista preliminar quedó señalada para el 17 de junio de 2022. No obstante, debido a posposiciones solicitadas en su mayoría por qué este no contrataba un representante legal privado, comenzó el 1 de diciembre de 2022, día en que se cumplía el término de detención preventiva. El 2 de diciembre de 2022, el peticionario presentó un auto de *habeas corpus* solicitando ser excarcelado. Luego de celebrar una vista y escuchar la posición de ambas partes, el TPI denegó el auto solicitado. En su determinación hizo particular énfasis en que el Ministerio Público estuvo preparado en todo momento para la continuación del proceso y que la carencia de acciones concretas del imputado para cumplir con las órdenes del tribunal de comparecer representado legalmente fue la razón por la que ello no ocurrió. Según consignó, con sus actuaciones el señor Lozada Ramos raptó el proceso impidiendo que el caso se atendiera.

Luego de haber evaluado detenidamente el recurso instado a la luz de los criterios de la Regla 40 de nuestro Reglamento, *supra,* no encontramos razón que nos mueva a variar la determinación recurrida.

IV

Por los fundamentos antes expuestos *denegamos* la expedición del auto.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Candelaria Rosa disiente con voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| JOSÉ A. LOZADA RAMOS<br><br>PETICIONARIO<br><br>v.<br><br>SUPERINTENDENTE COMPLEJO CORRECCIONAL BAYAMÓN 705<br><br>RECURRIDO | KLCE202300027 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala de Humacao<br><br>Caso Núm. HSCI202200211<br><br><br>Sobre:<br><br>*Habeas Corpus* |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

**VOTO DISIDENTE**
**JUEZ CANDELARIA ROSA**

En San Juan, Puerto Rico, a 31 de enero de 2023.

Disiento de la Resolución a la que arriba la mayoría pues la misma se ensaña, al igual que la Resolución del Tribunal de Primera Instancia, contra el derecho constitucional al *habeas corpus* reclamado por el Peticionario. Ello sin hilar argumento jurídico alguno derivable de la Constitución del Estado Libre Asociado de Puerto Rico o refrendado por la jurisprudencia vigente del Tribunal Supremo en torno a la disposición constitucional que enuncia *La detención preventiva antes del juicio no excederá de seis meses*. Art. II, sec. 11, Const. ELA, LPRA Tomo 1, ed. 2016. Por el contrario, dicha Resolución mas bien consta el hecho de la reclusión excesiva al incumplir los presupuestos de la jurisprudencia que cita y sin plantear alguna circunstancia sancionada por el Tribunal Supremo que le auxilie en su peregrina búsqueda de razones para excluir alguna porción del tiempo de prisión

del cómputo de 6 meses, o acaso alegar la existencia de ilegalidad o fraude que hubiese impedido el inicio puntual del juicio. *Cf. Pueblo v. Pagán Medina*, 178 DPR 228 (2010); *Ruíz v. Alcaide*, 155 DPR 498 (2001); *Sánchez v. González*, 78 DPR 849 (1955) (Sentencia).

En decir, la Resolución pretende construir su argumento jurídico sobre unos hechos que le desmienten y sobre 3 criterios legales que se encuentran en sus páginas 8-9. Uno a partir de *Sánchez v. González*, 78 DPR 849 (1955), otro a partir de *Pueblo v. Pagán Medina*, 178 DPR 228 (2010), y el último a partir de *Pueblo v. Díaz Rivera*, 204 DPR 472 (2020).

En cuanto a *Sánchez v. González, supra,* la Resolución mayoritaria expresa que "el Alto Foro reconoció que esta garantía constitucional tampoco puede ser objeto de rapto por parte del acusado, mediante actos tendentes a impedir que el Estado continúe el proceso". Véase Resolución, pág. 8. Sin embargo, no es cierto que el Tribunal Supremo "reconociera" tal límite al derecho de *habeas corpus*, ni es cierto que lo hiciera en los términos en que se pretende. Lo primero es que, por ser tal caso una Sentencia, no supone un reconocimiento jurídico institucional del Tribunal Supremo acerca de nada, excepto para ese caso específico, y en ese sentido yerra la mayoría en la valoración del alcance de la jurisprudencia; lo segundo y peor es que -distinto a como articulado por la mayoría- lo que dice realmente el caso es que "…ni la ilegalidad ni el fraude de un acusado -en actos tendentes a producir la incapacidad del Estado para someterle a juicio- ampararían su ejercicio incondicional". *Id.*, pág. 858. Es decir, que no se trata de meros actos que condicionen al estado, sino de aquellos que revistan ilegalidad o fraude, por lo que si la Resolución mayoritaria

interpretara bien la jurisprudencia que cita, estaría obligada a señalar en qué consistió la ilegalidad o fraude del imputado en este caso y por vía de qué actos lo cometió, cosa que no se ocupa en hacer. Al final, e irónicamente, lo único que concretamente resuelve ese caso en los hechos que atiende es que "las solicitudes de posposición de juicio hechas por el acusado en dos ocasiones antes de transcurrir el período de 6 meses…" no constituyen una renuncia ni suprimen el ejercicio del derecho de *habeas corpus*; exactamente lo contrario a lo que resuelve la mayoría en el presente recurso. *Id.*, pág. 855.

En cuanto a *Pueblo v. Pagán Medina, supra*, dice la Resolución mayoritaria que este opera "[e]n esta misma línea" -Resolución, pág. 8- refiriéndose a que sigue la línea que mal le atribuye a *Sánchez v. González, supra*, sobre los supuestos "actos tendentes a impedir que el estado siga el proceso". Sin embargo, a poco que se revise a *Pagán Medina*, queda claro que no se trata de "la misma línea", sino de un criterio formal y conceptual distinto -e inaplicable al presente caso- cual es que cuando un acusado se encuentra en el ámbito de la Regla 240 de procesabilidad, el estado está imposibilitado de proseguir el proceso penal en su contra. Tal incapacidad responde, sin embargo, a la no procesabilidad actual o potencial del acusado y no a ninguna actuación ilegal o fraudulenta de su parte vía actos tendentes a incapacitar al estado. Inconsecuente para este recurso.

Por último, la Resolución mayoritaria alude de forma inocua a *Pueblo v. Díaz, Rivera, supra*, pues en dicho caso el Tribunal Supremo resuelve que el *habeas corpus* no es reclamable una vez iniciado el juicio incluso si en alguna etapa previa al inicio del juicio se hubiese excedido el término de *habeas corpus*. No obstante, esto tampoco tiene

nada que ver con el presente recurso, que ni siquiera involucra a un acusado, sino a un imputado de delito contra quien no se ha encontrado causa en vista preliminar. Lo único que comparten los casos es que en ambos se excedió el término de 180 días y en ambos el Tribunal insistió en el encarcelamiento, aunque claro, con la diferencia de que en los hechos del Tribunal Supremo estuvo justificado por haber comenzado el juicio, mientras que aquí ni siquiera acaba la vista preliminar.

En fin, agotada de ese modo la argumentación jurídica con que la Resolución mayoritaria intenta fundamentar su determinación de mantener encerrado en la cárcel al Peticionario después de excedidos los 180 días sin que se hubiese iniciado el juicio, los foros de primera y segunda instancia de este caso parecen plantear que los hechos de este recurso exceden la situación límite considerada por el Tribunal Supremo en *Pueblo v. Aponte Ruperto*, 199 DPR 538 (2018), en el que se rechazó exceptuar la rigidez del término de *habeas corpus* aún en circunstancias del cierre de los Tribunales causado por la devastación ocasionada por el Huracán María. Es decir, el Juez de Primera Instancia -y este Tribunal- pretenden sustituir el carácter inexorable e irrenunciable atribuido por la jurisprudencia a la disposición constitucional que impide la aprehensión por más de 6 meses en espera de juicio por un criterio de adjudicación análogo al de causa justificada y, además, contienden que el aplazamiento de vistas sería del carácter que justifica denegar el *habeas corpus* a un ciudadano que lleva más de 200 días en prisión sin juicio. Efectivamente atribuyendo a dichas suspensiones el peso que el cierre de todo un sistema de tribunales no tuvo para el Tribunal Supremo en *Pueblo v. Aponte Ruperto, supra*.

Lo cierto es que el Tribunal de Primera Instancia y la mayoría de este Tribunal se equivocan. Resulta palmario que, en el contexto del presente caso, el Tribunal de Primera Instancia adjudicó la petición de *habeas corpus* que tuvo ante sí contrario al estado de derecho. A partir del recuento procesal efectuado por el foro recurrido, la Resolución mayoritaria deduce que "debido a posposiciones solicitadas en su mayoría porque este no contrataba un representante legal privado, [la vista preliminar]comenzó el 1 de diciembre de 2022, día en que se cumplía el término de detención preventiva". Resolución, pág. 9. No obstante, tal aseveración es evidentemente incorrecta, puesto que en el propio recuento procesal efectuado por el Tribunal de Primera Instancia y reproducido en la Resolución mayoritaria, se desprende expresamente que de las 21 vistas reseñadas solo en la minoría de estas -7 vistas- enumeradas en los incisos 6, 7, 8, 14, 15, 16 y 17 de la Resolución, el Peticionario compareció sin representación legal. Apéndice, págs. 57 a la 63, reproducido en la Resolución, págs. 3-5.

Por el contrario, lo que desvela el propio recuento procesal del foro recurrido, tal cual adoptado en la Resolución mayoritaria, es que en este caso hubo suspensiones de todo tipo, incluyendo las provocadas por el Departamento de Corrección por no traer al reo (inciso 1 del recuento procesal), el proceso de petición de descalificación del licenciado Cameron Gordon incoado por el Ministerio Público (incisos 2-4 del recuento procesal), el proceso de Covid-19 del Peticionario (inciso 5 del recuento procesal) y, sobre todo, las suspensiones efectuadas en 9 vistas en las que el Peticionario sí compareció representado por abogado y el Tribunal no celebró la vista preliminar a pesar de que el Ministerio Público estuvo preparado: se trata de las

vistas reseñadas en los incisos 9, 10, 11, 12, 13, 18, 19, 20 y 21 del recuento procesal, en las cuales el Tribunal -en lugar de forzar la realización de la vista en cuestión- permitió la suspensión del proceso solicitada por 4 abogados distintos (licenciados Nido Escribano, Aponte Bermúdez, Vega González y Castro Fontánez), relevó a dos de ellos de la representación legal (Nido Escribano y Vega González) y se entretuvo con la posibilidad de que uno de ellos asumiera o no la representación (Aponte Bermúdez). Como si tales determinaciones judiciales no fueran susceptibles de acreditar al paso del tiempo o fueran excluibles del término de *habeas corpus*. Es decir, si alguien permitió el retraso del procedimiento en este caso fue el Tribunal de Primera Instancia. ¿Cómo en lugar de obligar la celebración de la vista preliminar en las 9 ocasiones en que el imputado estuvo representado y el Ministerio Público preparado, el foro recurrido optó por suspender, entretener y hasta relevar abogados? Ello tiene que ver más con la explicación del retraso en este caso que con la teoría del rapto que la Resolución mayoritaria permite adelantar sin base fáctica ni jurídica para impedir el ejercicio del derecho constitucional al *habeas corpus*.

Por las consideraciones expuestas, disiento de la Resolución que hoy se emite.

Carlos I. Candelaria Rosa
Juez de Apelaciones